United States Court of Appeals,

Fifth Circuit.

No. 92-1041.

UNITED STATES FIRE INSURANCE COMPANY, Plaintiff-Counter Defendant-Appellee,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for Empire Savings and Loan Association, Defendant-Counter Plaintiff-Appellant.

Jan. 27, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before WISDOM, JOLLY, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

I.

The Federal Deposit Insurance Corporation (FDIC) requires all member banks to purchase insurance coverage under Savings and Loan Blanket Bond Standard Form No. 22 (Form 22). Form 22 provides insurance against, among other things, loss by fraud or dishonesty of Savings and Loan employees discovered during the term of the bond.

Empire Savings and Loan Association (Empire), a Texas Savings and Loan and its predecessor, Town East Savings and Loan Association, purchased a Form No. 22 Blanket Bond from the United States Fire Insurance Company (US Fire).[1] The Bond was effective August 5, 1978. Section 11(c) of this bond provides that the bond automatically terminates "immediately upon the taking over of the Insured by a receiver or other liquidator or by State or Federal officials."

In 1982, both state and federal regulators began to monitor Empire because of questionable lending practices. In 1983 the Federal Home Loan Bank Board (FHLBB) issued a temporary cease and desist order, and on January 9, 1984, the Texas Savings and Loan Commission issued a cease and desist order, and Empire placed itself under voluntary supervisory control by the Texas Commission.

---

[1] While the Savings and Loan Bond involved in this case was issued in Texas, it is the same standard Form 22 bond used across the country and required by the FDIC in it national regulations 12 C.F.R. § 563.190 (formerly 12 C.F.R. 563.19).

US Fire contended that on January 9, 1984, the Bond terminated after Empire was taken over by the Texas Savings and Loan Commission. As the acts giving rise to FDIC's claims were not discovered until after January 9, 1984, US Fire argued that it was entitled to summary judgment as to FDIC's claims and a judgment declaring it to be without liability on the Bond.

FDIC responded that § 11(c) of the Bond, under which the Bond was terminated, is unenforceable because it is contrary to federal law and violates public policy. FDIC further contended that the term "taking over" as used in § 11(c) of the Bond is ambiguous and should be interpreted against US Fire as the drafter of the term. Alternatively, FDIC contended that a takeover did not occur within the meaning of § 11(c).

The District Court granted summary judgment in favor of U.S. Fire, after concluding that the Texas Savings and Loan Commission's assumption of control constituted a takeover thereby triggering the Bond's automatic termination provision. The FDIC appeals.

## II. DISCUSSION

This Court reviews a summary judgment de novo. Summary judgment is appropriate if "there is no genuine issue of material fact (so) that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

*Sharp v. FSLIC,* 858 F.2d 1042 (5th Cir.1988) guides our determination of the issues in this case. *Sharp* resolves the FDIC's argument regarding public policy, enforceability of § 11(c), and ambiguity and makes clear that a takeover does not have to be in the form of a receivership or liquidation, but occurs any time the government assumes control over a thrift institution. *Id.* at 1045.

In this case, the summary judgment evidence reflects that Empire was prohibited by the supervisory takeover from engaging in activities that are core functions of a savings and loan.[2]

The dictionary definition of takeover: "assume control or management of;—not necessarily involving the transfer of absolute title," *Black's Law Dictionary* 1454 (6th ed. 1990) suggests that a takeover indeed occurred in this case.

---

[2]Empire could not lend or invest any of its funds, withdraw any bank accounts, encumber any assets or incur any debt including accepting deposits without approval; in effect it could no longer operate as a Savings and Loan unless it got approval.

*Sharp* put the issue of the ambiguity of the takeover termination provision in § 11 to rest by stating that neither the Form 22 Bond nor the takeover provision were ambiguous. *Id.* at 1045.[3]

Therefore, based on the clear terms of the cease and desist order and the supervisory control order, we hold that the District Court did not err in finding that Empire was taken over on January 9, 1984, and that the bond terminated on that date. The fact that Empire voluntarily accepted the January 9, 1984 supervisory order does not affect our decision. We are not concerned with the manner in which the order was implemented in determining the application of § 11 but rather its effect. The Bond's termination provision does not require a "hostile" or "involuntary" taking over but merely requires a "taking over", regardless of whether it be by consent or by force of law. *Id.* 1045-46.

Moreover, this Court noted in *Sharp,* that because the language the court is being asked to construe was the result of a collaborative effort between the American Bankers Association and the American Surety Association, there is no reason to construe the term against US Fire even if it were ambiguous. *Id.* at 1046.

FDIC's arguments that § 11(c) permits only liquidators to take over has also been rejected by *Sharp.* Although, *Sharp* involved a conservator and not a supervisor, we look at the actual authority and control exercised over Empire in determining whether Empire was taken over within the meaning of § 11(c). The title given to the state supervisory agent and the fact that the state or federal authorities could have employed more restrictive means of controlling the institution does not determine whether § 11(c) is implicated.

### III. CONCLUSION

The judgment of the District Court is AFFIRMED.

---

[3]Section 12, the termination provision in the Bond in *Sharp,* is equivalent to § 11 in this case.